NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13397

IN THE MATTER OF THE ESTATE OF THERESA A. JABLONSKI.


Middlesex.     May 1, 2023. – August 24, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


Devise and Legacy, Residuary interests, Remainder interests,
     Extrinsic evidence affecting construction, Intestacy.  Dog.
     Trust, Construction, Remainder interests, Termination.
     Will, Construction, Extrinsic evidence.  Charity.



     Petition filed in the Middlesex Division of the Probate and
Family Court Department on June 19, 2019.

     A motion for partial summary judgment was heard by Elaine
M. Moriarty, J.; a motion for reconsideration was heard by her;
and the remaining issues were also heard by her.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     David M. Levy for the objectors.
     Penelope A. Kathiwala for the proponent.


     CYPHER, J.  The decedent, Theresa A. Jablonski, executed a

will that left her entire estate to a testamentary trust,

pursuant to G. L. c. 203E, § 408, for the benefit of her fifteen

year old cocker spaniel, Licorice, and any other pet she might have at the time of her death. According to the terms of the trust, after the death of all beneficiaries, the trustees were obligated to designate a charity to receive the remainder of any and all funds in the trustees' control. At the time of the decedent's death, however, neither Licorice nor any other pet survived the decedent. This case presents the issue whether the remainder of the decedent's estate to charity is valid despite Licorice having predeceased the decedent or, alternatively, whether Licorice's failure to survive the decedent renders the pet trust void, such that the decedent's property is to pass through intestacy to the decedent's heirs. Where we conclude that the provisions for Licorice in the testamentary trust lapsed, and where there exists a genuine issue of material fact whether there was a clear intention that the charitable remainder not be conditioned on Licorice's survival of the decedent, the judge erred in awarding partial summary judgment. Accordingly, we vacate the decree and order, and we remand the matter for further proceedings.

Background. We recite the facts in the light most favorable to the nonmoving party. See Huang v. Ma, 491 Mass. 235, 239 (2023) (evidence viewed in light most favorable to nonmoving party on review of decision on motion for summary judgment). On August 13, 2013, the decedent, Theresa A.

Jablonski, executed a will that left her entire estate in trust to her cocker spaniel, Licorice. At the time the will was executed, the decedent's niece, Ann M. Jablonski,[1] retained a durable power of attorney, and she managed the decedent's affairs. The will had been prepared by Ann's attorney at Ann's request. According to the attorney, the decedent's "main concern" in executing the will was to ensure care for Licorice.

Article V of the will created the "Licorice Testamentary Trust" (trust), pursuant to the requirements of G. L. c. 203E, § 408. The trust's beneficiaries were limited to the decedent's dog, Licorice, as well as any other pets the decedent may have in her possession at the time of her death. According to the terms of the trust, it was to be funded on the decedent's death. The trustees, not designated by the trust instrument, were to use the funds of the trust to provide for the "health, care, maintenance, and appearance" of the trust beneficiaries. After the death of all beneficiaries, i.e., Licorice and any other pet who survived the decedent, the trustees then retained the "power and authority to designate a charity to receive the remainder of any and all such funds that shall be in [the trustees'] possession, custody or control."

---

[1] Because some parties share a surname, we will refer to them by their first names.

Article V of the will, which contained the provisions that established the instant trust, was the only bequest in the will. Article IV of the will, however, contained the will's residuary clause. According to Article IV, all remaining property, including "all lapsed legacies and devises or other gifts made by this [w]ill which fail for any reason" would be given in trust to the trustees of the trust that was established in Article V of the will.

Approximately six years after the execution of the will, on May 24, 2019, the decedent died at the age of eighty-three. She died without a surviving spouse, child, parent, or sibling. Her next of kin were her four nieces and nephews: Joseph J. Jablonski, Jr., Paul A. Jablonski, Sally E. Jablonski, and Ann M. Jablonski. Licorice, the decedent's only named beneficiary, had been euthanized approximately two years earlier, on March 15, 2017, and thus predeceased her. No other pets survived her.

On June 19, 2019, Ann filed a petition in the Probate and Family Court to probate the decedent's will and to be appointed as personal representative, in accordance with the will. The decedent's other three surviving heirs (objectors), Joseph, Paul, and Sally, objected to the purported will and to Ann's appointment as personal representative of the estate. The objectors argued that the only bequest in the will, i.e., the trust set up for the care of Licorice, lapsed because no pet had

survived the decedent.[2] Ann moved to strike the objections, arguing that the decedent intended to leave her entire estate to the trust for the benefit of Licorice and then to charity on Licorice's death, even if Licorice predeceased her. The motion was denied. After the case was reassigned to the court's fiduciary litigation session, the parties agreed to resolve on summary judgment the issue whether the bequest to the trust had lapsed.

Following the objectors' motion for summary judgment, the judge granted partial summary judgment in favor of Ann on the validity of the charitable remainder provision. The judge held that, as a matter of law, the trust provision for Licorice failed because Licorice predeceased Theresa. See G. L. c. 203E, § 408 (a) ("A trust for the care of animals alive during the settlor's lifetime shall be valid. Unless the trust instrument provides for an earlier termination, the trust shall terminate upon the death of the animal or, if the trust was created to provide for the care of more than [one] animal alive during the settlor's lifetime, upon the death of [the] last surviving animal"). Despite the failure of the trust, the judge awarded partial summary judgment in favor of Ann because the charitable

---

[2] The objectors also alleged that the decedent lacked testamentary capacity and that the will was procured by undue influence from Ann.

remainder provision was to be given effect under the doctrine of acceleration of remainders. See Thompson v. Thornton, 197 Mass. 273, 275 (1908) ("The death of the life tenant before the testator simply accelerates the time when the devise over becomes operative").

The objectors sought timely reconsideration of the judge's award of partial summary judgment in favor of Ann. The motion for reconsideration was denied. In denying the motion for reconsideration, the judge determined that the decedent "intend[ed] for the charitable remainder to take effect regardless of whether her pet survived her." The judge determined that the lack of an intent to condition the charitable remainder on Licorice's survival of the decedent was "clear" from the fact that the Article V trust was the sole bequest in the will. The judge also emphasized that the lack of an alternative gift under the will, in the event Licorice predeceased the decedent, was an indication that the decedent's intent was for her estate to pass through the Article V trust regardless of whether Licorice predeceased her. Moreover, the judge determined that, although the Article IV residuary clause of the decedent's will did not "save" the Article V provision by itself and prevent intestacy, it did indicate some intent to avoid intestacy.

Following summary judgment, the case proceeded to trial to determine whether the will was the product of undue influence and whether Ann improperly diverted the decedent's assets before her death.[3] The judge issued a decision that the objectors had proved neither claim. Following the judge's decision, a final decree entered admitting the will to probate and appointing Ann as personal representative. The objectors filed a timely notice of appeal, and we transferred the case to this court on our own motion.

Discussion. Pursuant to Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002), summary judgment is appropriate only where there exists no genuine issue of material fact, such that the moving party is entitled to judgment as matter of law. "Our review of a decision on a motion for summary judgment is de novo." HSBC Bank USA, N.A. v. Morris, 490 Mass. 322, 326 (2022), quoting Berry v. Commerce Ins. Co., 488 Mass. 633, 636 (2021).

At the summary judgment stage, the objectors argued that, because Theresa died without any pets in her possession, the trust necessarily failed and her estate must pass by intestate succession. They renew this argument on appeal. Ann, however, claims that the charitable remainder provision in Article V of

---

[3] The objectors withdrew their claim that Theresa lacked testamentary capacity.

the will is valid and survives, despite the failure of the trust provisions for Licorice.

General Laws c. 203E, § 408, the so-called "pet trust statute," governs the requirements for a valid trust for the care of an animal. "We review questions of statutory interpretation de novo." Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 331 (2021), citing Boss v. Leverett, 484 Mass. 553, 556 (2020). "In interpreting a statute, we follow the plain language when it is unambiguous and when its application would not lead to an absurd result, or contravene the Legislature's clear intent" (quotations omitted). Desrosiers v. Governor, 486 Mass. 369, 376 (2020), cert. denied, 142 S. Ct. 83 (2021), quoting Commonwealth v. Kelly, 470 Mass. 682, 689 (2015). The actual words of the statute generally are the main source from which we ascertain legislative purpose. Kelly, supra at 688.

Pursuant to the statute's plain language, "[a] trust for the care of animals alive during the settlor's lifetime shall be valid." G. L. c. 203E, § 408 (a). Under the requirements created by § 408, "[u]nless the trust instrument provides for an earlier termination, the trust shall terminate upon the death of the animal or, if the trust was created to provide for the care of more than [one] animal alive during the settlor's lifetime, upon the death of [the] last surviving animal" (emphasis added).

Id.  Licorice died on March 15, 2017, and thus predeceased the decedent.  The trust was created for the benefit of both Licorice "and/or any pets that [the decedent] ha[d] in [her] possession at the time of [her] death."  Neither Licorice nor any other pet survived Theresa.  According to the plain language of the statute, where Licorice was the last surviving animal, the trust terminated on the date of Licorice's death.  See id.  Thus, the trust terminated before Theresa's death.[4]  See id.

On termination of a trust pursuant to G. L. c. 203E, § 408 (a), the trustee is required to "transfer the unexpended trust property in the following order:  (1) as directed in the trust instrument; (2) to the settlor, if living; (3) if the trust was created in a nonresiduary clause in the transferor's will or in a codicil to the transferor's will, under the residuary clause in the transferor's will or codicil; or (4) to the settlor's heirs in accordance with [G. L. c. 190B]" (emphasis added).  G. L. c. 203E, § 408 (d).  Ann argues that the trust instrument explicitly directs that the remainder of the funds, following the death of all beneficiaries of the trust, be given to a charity that is to be named by the trustees.

The trust instrument explicitly states that the trustees "shall have the power and authority to designate a charity to

---

[4] Theresa died approximately two years after Licorice.

receive the remainder of any and all such funds that <u>shall be in their possession, custody or control</u>" (emphasis added). However, no such funds existed in the possession, custody, or control of the trustees at the time of the trust's termination. The trust was a testamentary trust; and, like any testamentary disposition, the trust only was to be funded and become effective on Theresa's death,[5] an event that had yet to occur at the time of the trust's termination according to G. L. c. 203E, § 408 (a). See <u>Leahy</u> v. <u>Old Colony Trust Co.</u>, 326 Mass. 49, 52 (1950) ("A testamentary disposition becomes operative only upon and by reason of the death of the owner who makes it" [citation omitted]). See also W.J. Brisk; M.A. Hoag, M. MacLaughlin-Barck, Massachusetts Elder Law § 4.06[8][a] (2023) ("Testamentary trusts are funded upon the grantor's death").

Therefore, where Licorice predeceased Theresa, the trust provisions in Article V that created the Licorice Testamentary Trust for the benefit of Licorice lapsed. See Hahn <u>vs</u>. Estate of Stange, Tex. Ct. App., No. 04-07-00253-CV (Feb. 13, 2008) (where beneficiary cat predeceased trust settlor, and no other living beneficiary cat could be identified or located,

---

[5] The actual language of the Licorice Testamentary Trust also supports the principle that it was to be funded and become effective only on the decedent's death. Specifically, the trust instrument stated:  "It is anticipated that this [t]rust will be funded upon the death of the [t]estator."

testamentary pet trust failed).  Because the trust lapsed, it falls into the residue, unless the will provides otherwise.  See Flannery v. McNamara, 432 Mass. 665, 669 (2000) ("it [is] settled law that, when a beneficiary predeceases the testator, the legacy lapses and falls into residue if there is one; otherwise it must pass as intestate property").  See also Sutherland v. Flaherty, 1 Mass. App. Ct. 388, 389-390 (1973) ("It is well settled that if a legatee not a relation of the testator predeceases a testator, the legacy lapses unless the will provides otherwise" [emphasis added]); G. L. c. 190B, § 2-604 ("a devise, other than a residuary devise, that fails for any reason becomes a part of the residue" [emphasis added]).

Ann argues, and the motion judge agreed, that although the trust provisions failed, and the gifts for the benefit of Licorice lapsed, the remainder to the to-be-named charity must be given effect under the doctrine of acceleration of remainders.  See Thompson, 197 Mass. at 275 ("The death of the life tenant before the testator simply accelerates the time when the devise over becomes operative").  See also Estate of McNeill, 230 Cal. App. 2d 449, 451-452, 454 (1964) (where it "was the clear intention" of decedent that remainder of her estate be gifted to both "the Los Angeles branch" and "the San Francisco branch" of "the Society for the Prevention of Cruelty to Animals," court accelerated charitable remainder despite pets

having predeceased testator); In re Mills' Estate, 111 N.Y.S. 2d 622, 625-626 (Sur. Ct. 1952) (intended remainder to New York Women's League for Animals may be given effect after invalid pet trust because of decedent's clear intent that gift was in no way conditional on caring for pets).

However, unlike Estate of McNeill and In re Mills' Estate, both of which serve only as nonbinding authority from other jurisdictions, the decedent's will does not demonstrate a "clear intent" that the charitable remainder be awarded to the yet-to-be-named charity in the event Licorice were to predecease the decedent.  In both Estate of McNeill, 230 Cal. App. 2d at 451, and In re Mills' Estate, 111 N.Y.S.2d at 625, the testator had named a specific charity, both of which were animal charities. Here, no such explicit charity was named.  While the failure to name a charity does not by itself invalidate the charitable remainder, see G. L. c. 203E, § 405 (b), such failure at least creates ambiguity whether the decedent wanted the remainder to go to charity or, alternatively, her primary concern was the well-being of Licorice following her death.  See Flannery, 432 Mass. at 668 ("latent ambiguity emerges when the words of a will appear to be unambiguous on their face, but certain extrinsic facts render their meaning uncertain" [citation omitted]).

Furthermore, while we agree with the motion judge that the possibility that Licorice would predecease Theresa was

reasonably foreseeable, the omission of whether the to-be-named charity was to receive the remainder in the event Licorice predeceased the decedent, whether intentional or unintentional, ultimately is a question of fact -- one not best suited to be resolved on summary judgment. See White v. White, 322 Mass. 30, 33-34 (1947) (omission in will, whether intentional or unintentional, is question of fact). We disagree with the motion judge's conclusion that the mere creation of a residuary clause in the will, coupled with the lack of an alternative gift apart from the Article V trust, demonstrates a clear intent from the decedent that the charitable remainder was not conditioned on Licorice's survival of her.

"The fundamental rule for the construction of wills 'is to ascertain the intention of the testator from the whole instrument, attributing due weight to all its language, considered in the light of the circumstances known to him at the time of its execution and to give effect to that intent unless some positive rule of law forbids.'" Hershman-Tcherepnin v. Tcherepnin, 452 Mass. 77, 84 (2008), quoting Fitts v. Powell, 307 Mass. 449, 454 (1940). "Although the interpretation of a will begins with the four corners of the instrument, " extrinsic evidence may be necessary to resolve ambiguities that arise in a will. Hershman-Tcherepnin, supra at 84-85.

Here, extrinsic evidence is necessary to resolve the ambiguity whether, at the time of the making of the will, the decedent intended that the to-be-named charity was to receive the remainder notwithstanding Licorice's failure to survive her. Thus, there exists a genuine issue of fact, such that the award of summary judgment was improper.[6]  See Adams v. Schneider Elec. USA, 492 Mass. 271, 280 (2023) ("Summary judgment is appropriate where there is no material issue of fact in dispute" [citation omitted]); Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991) (when state of mind questions, such as intent, are at issue, summary judgment often is inappropriate); Mass. R. Civ. P. 56 (c).  Cf. Hershman-Tcherepnin, 452 Mass. at 86-87 (court properly could resolve ambiguity on summary judgment record because no party raised genuine dispute of material facts surrounding will's execution to warrant resolution at trial).

If, following remand, there is no clear intention that the charitable gift was to be accelerated in the event Licorice predeceased the decedent, then the lapsed trust will fall into the will's residue, as we explained supra.  See Flannery, 432 Mass. at 669.  Article IV of the will contains the residuary clause.  It states, in pertinent part, "I hereby give . . . all

---

[6] "The written instrument is the final and unalterable expression of the purpose of the testator.  The power of the court is limited to interpretation and construction.  It cannot make a new will."  Polsey v. Newton, 199 Mass. 450, 454 (1908).

lapsed legacies and devises or other gifts made by this [w]ill which <u>fail for any reason</u>, tangible or intangible, including any property over which I have a power of appointment, in trust to the [t]rustees of the LICORICE TESTAMENTARY TRUST established herein" (emphasis added).  Under the express terms of the decedent's will, any lapsed gifts fall into the residuary of the will.

The residuary of the will, however, leaves all lapsed gifts to a lapsed and invalid trust, as discussed <u>supra</u>.  Therefore, in the event there exists no clear intent that the charitable remainder was to be accelerated on Licorice's failure to survive the decedent, the entire trust lapses into the residue, and the residue also lapses because the residue leaves everything to the invalid Licorice Testamentary Trust.  As a result, the gift then will pass as intestate property.  See <u>Bray</u> v. <u>Bray</u>, 359 Mass. 439, 441 (1971) ("Where a gift lapses which is itself part of the residue, it must pass as intestate property"); <u>Crocker</u> v. <u>Crocker</u>, 230 Mass. 478, 482 (1918) ("Where a legacy lapses which is a part of the residue it cannot fall again into the residue. It must pass as intestate property").

Accordingly, we vacate the decree and order on the petition for formal adjudication dated January 13, 2022, and remand the matter for further proceedings consistent with this opinion.[7]

<u>So ordered</u>.

---

[7] Where we have determined that the judge erred in granting partial summary judgment and, as a result, are vacating the decree and order on the petition for formal adjudication of the will, we need not address the objectors' argument that the trial judge made a clearly erroneous finding at trial that Ann had not misappropriated the decedent's assets.  See Tenczar v. Indian Pond Country Club, Inc., 491 Mass. 89, 107 n.17 (2022) (unnecessary to reach merits of appellant's arguments that $3.4 million jury award was excessive where judgment was vacated, verdict was set aside, and matter was remanded for new trial).